ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Pacific Dredge & Construction LLC | )     ASBCA No. 63234 |
| | ) |
| Under Contract No. W912PL-20-C-0003 | ) |

APPEARANCES FOR THE APPELLANT:     W. Samuel Niece, Esq.
                                           Michael W. Squeri, Esq.
                                             Ralls Gruber & Niece LLP
                                             San Mateo, CA

APPEARANCES FOR THE GOVERNMENT:     Michael P. Goodman, Esq.
                                             Engineer Chief Trial Attorney
                                             John F. Bazán, Esq.
                                             Engineer Trial Attorney
                                             U.S. Army Engineer District, Los Angeles

OPINION BY ADMINISTRATIVE JUDGE EYESTER
PURSUANT TO BOARD RULE 12.2

Appellant Pacific Dredge & Construction LLC (Pacific Dredge) appeals a contracting officer's denial of its claim and has elected to proceed under the Board's Small Claims (Expedited) Procedures, Board Rule 12.2. The Contract Disputes Act, 41 U.S.C. § 7106(b)(4)-(5), as implemented by Board Rule 12.2, provides that this decision shall have no precedential value, and in the absence of fraud, shall be final and conclusive and may not be appealed or set aside. For the reasons stated below, the appeal is denied.

SUMMARY FINDINGS OF FACT

On October 2, 2019, the U.S. Army Corps of Engineers issued invitation for bids No. W912PL20B0001 for the award of a fixed-priced contract for construction services consisting of maintenance dredging of the federal navigation channels at the Santa Barbra Harbor (R4, tab 4 at 20, 36). Bidders were to submit fixed-prices for all contract line item numbers (CLINs), which included a CLIN for dredging for the first year, first cycle, and optional CLINs for additional cycles and years (*id.* at 23-24). The solicitation included a "Checklist for the CLIN Schedule," which set forth the following checklist item for bidders: "Do prices for each bid item include all costs, mark-ups and taxes (if any taxes are imposed)? Y_ NA_" (*id.* at 25).

The solicitation included Federal Acquisition Regulation (FAR) clause 52.222-30, CONSTRUCTION WAGE RATE REQUIREMENTS – PRICE ADJUSTMENT (NONE OR SEPARATELY SPECIFIED METHOD) (AUG 2018), which explained the following to the bidders:

> (a) The wage determination issued under the Construction Wage Rate Requirements statute by the Administrator, Wage and Hour Division, U.S. Department of Labor [(DOL)], that is effective for an option to extend the term of the contract, will apply to that option period.
>
> (b) *The Contracting Officer will make no adjustment in contract price, other than provided for elsewhere in this contract, to cover any increases or decreases in wages and benefits as a result of--*
>
> (1) *Incorporation of the Department of Labor's wage determination applicable at the exercise of the option to extend the term of the contract*;
>
> *      *      *      *
>
> (End of clause)

(R4, tab 4 at 115) (emphasis added). We find that the solicitation did not provide "elsewhere" anything setting forth a specific pricing method that permitted a price adjustment to cover increases or decreases resulting from DOL construction wage determinations upon exercise of an option to extend the term of the contract.

The government awarded the contract to Pacific Dredge on December 27, 2019, and at the same time exercised the base bid CLINs and one option CLIN (R4, tab 6 at 485, 487). Pacific Dredge priced its option year unit amounts higher than the first-year amounts (*id.* at 487). The contract included FAR clause 52.222-30, set forth above, as well as FAR 52.243-4, CHANGES (JUNE 2007) (*id.* at 561-62, 625-26). As with the solicitation, we find the contract did not provide "elsewhere" anything setting forth a specific pricing method that permitted a price adjustment to cover increases or decreases resulting from DOL construction wage determinations upon exercise of an option to extend the term of the contract.

On February 26, 2021, the agency issued unilateral Mod. P00003, which exercised the CLINs for the second year, fourth cycle option, with a performance period beginning March 1, 2021 (R4, tab 9 at 776). The modification stated that a new DOL construction wage determination issued on January 1, 2021, applied and superseded the prior one applicable to the contract (*id.* at 777-78). The modification

did not increase the contract amount to account for any changes in the wage determination (*compare* R4, tab 6 at 487 to tab 9 at 808-09).

On March 9, 2021, Pacific Dredge acknowledged Mod. P00003 and informed the contracting officer that the modification constituted a change pursuant to FAR 52.243-4, CHANGES, and asserted its right to an equitable adjustment (R4, tab 16). On March 17, 2021, the contracting officer denied the request for an equitable adjustment (REA) because the contract included FAR 52.222-30, which stated that the contracting officer would make no adjustment in the contract price upon incorporation of a new or revised construction wage determination at the exercise of each option to extend the term of the contract (R4, tab 17). Pacific Dredge responded with a formal REA seeking $42,752.81 for changes to the contract (*i.e.*, the increased wage rates) and stated that its bid only included labor costs based on the wage rates required at that time and did not include any contingency amounts (R4, tab 18 at 994). The government denied the REA (R4, tab 19).

On September 13, 2021, Pacific Dredge filed a claim with the contracting officer seeking $44,606.39 and arguing, as it had before, that it did not price its bid using contingency pricing, and Mod. P00003 constituted a change order (R4, tab 20 at 1050-53). On December 13, 2021, the agency issued the contracting officer's final decision which denied the claim for the same reasons discussed above and explained that the contract is unambiguous on this point. (R4, tab 3). This appeal followed.

## DECISION

The appellant has moved for summary judgment on entitlement and the government opposes the motion. The appellant argues that the agency failed to interpret all of the terms of the contract because FAR 52.222-30, which reads in pertinent part that the "Contracting Officer will make no adjustment in contract price, *other than provided for elsewhere in this contract*, to cover any increases of decreases in wages and benefits as a result of" incorporation of a DOL construction wage determination, requires the contracting officer to look to the Changes clause (app. mem. at 3; app. reply at 1-3). The appellant notes that the Changes clause, FAR 52.243-4, states that the contracting officer shall make an equitable adjustment to the contract when changing the specifications or method or manner of performance of the work set forth in the contract (app. mem. at 4-5; app. reply at 2-3). The appellant asserts that the modification directed the appellant to pay its workers a higher wage rate and this constituted both a change in the contract's written specifications and in the method or manner of appellant's work and it is therefore owed an equitable adjustment (app. mem. at 5; app. reply at 2-3). The appellant also asserts, *inter alia*, that if the Board does not agree with this argument, then the Board should find the contract contained a latent ambiguity as there is a strong policy against contingent bidding (app. mem. at 6-7).

3

We will grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The interpretation of a contract, particularly the issue of whether a contract is ambiguous, is a question of law that generally is amenable to summary judgment. *R.L. Persons Constr., Inc.*, ASBCA No. 60121, 18-1 BCA ¶ 37,007 at 180,236-37 (citation omitted). The issue of whether any ambiguity is patent or latent is a question of law that is also appropriate for resolution on summary judgment. *Id.*

The Board has addressed this issue already in *Gulf Pac. Cont., LLC*, ASBCA No. 61434, 21-1 BCA ¶ 37,928, and consequently directed the parties here to discuss that decision in their briefs. In *Gulf Pac. Cont., LLC*, the Board ruled that: (1) FAR 52.222-30(b) unambiguously informs offerors that there will be no adjustment to the prices in the awarded contract for DOL construction wage rate increases incorporated via a modification extending the term of the contract unless a specific method of adjustment is provided for elsewhere in the contract, and the contractor should therefore price its option years to take into account the risk of increased wages; and (2) an REA clause incorporated by reference in the contract--Defense Federal Acquisition Regulation Supplement 252.243-7002--did not create an ambiguity because the REA clause cannot be reasonably read to create an independent basis for the agency to pay for the wage increase. *Gulf Pac. Cont., LLC*, 21-1 BCA ¶ 37,928 at 184,205-08. Although the appellant argues otherwise, we conclude that the Board's majority holding in that appeal is directly on point.

We provide a short background on the FAR clause at issue to shed more light on the subject but note that an enhanced discussion can be found in *Gulf Pac. Cont., LLC*. As relevant here, the FAR instruction for contracting officers states that FAR 52.222-30 is to be used in solicitations and contracts if the contract is expected to: (1) be fixed-price, (2) subject to the Construction Wage Rate Requirements statute, (3) contain option provisions by which the contracting officer may extend the term of the contract, and (4) utilize one of the two contract price adjustment methods set forth at FAR 22.404-12(c)(1) or (2). FAR 22.407(e).

FAR 22.404-12 sets forth several price adjustment methods for wage rate changes at the time an option to extend is exercised, and the contracting officer, after considering which method is suitable to the interest of the government, chooses one of those options. As relevant here, FAR 22.404-12(c)(1) states the contracting officer may allow offerors to bid or propose separate prices for each option period and as a result, no further adjustment to the contract price will be made due to incorporation of a new or revised construction wage determination at the exercise of each option to extend the term of the contract. FAR 22.404-12(c)(1); *see also* Federal Acquisition Regulation; Application of the Davis-Bacon Act to Construction Contracts With Options To Extend the Term of the Contract, 66 Fed. Reg. 53479-01 (Oct. 22, 2001)

4

(explaining for purposes of the Final Regulatory Flexibility Analysis that there is no adjustment in the contract price in this instance "because the option prices may include an amount to cover estimated increases"). The contracting officer utilized that method here.

If a contracting officer does not utilize the method at FAR 22.404-12(c)(1), he may then utilize the method at FAR 22.404-12(c)(2), which requires the contracting officer to include "a separately specified pricing method that permits an adjustment to the contractor price or contract labor unit price" at the exercise of the option. FAR 22.404-12(c)(2). The rule explains that one "example of a contract pricing method the contracting officer might separately specify is incorporation in the solicitation and resulting contract" of pricing data that is multiplied by a factor proposed by the contractor. *Id.*

While this background on the FAR is helpful, contrary to arguments made by the appellant, Pacific Dredge did not need to read the prescription set forth in FAR 22.407 or the policy set forth in FAR 22.404-12 to understand that no adjustment would be made. As in *Gulf Pac. Cont., LLC*, the solicitation and contract terms here are patently unambiguous. Appellant was notified in the solicitation pursuant to the plain language of FAR 52.222-30, CONSTRUCTION WAGE RATE REQUIREMENTS – PRICE ADJUSTMENT (NONE OR SEPARATELY SPECIFIED METHOD) (AUG 2018), that the contracting officer would make no adjustment (*i.e.,* the "NONE" method) in the contract price to cover any increases or decreases in wages and benefits due to a DOL wage determination applicable at the exercise of an option that extends the term of the contract (R4, tab 4 at 115). In this regard, neither the solicitation nor contract contained "elsewhere" a separately specified pricing *method*.[1] Rather, the solicitation and contract allowed bidders to propose separate prices for option periods.[2] Therefore, bidders were to have priced the wages for each option period based upon estimated increases. In fact, the solicitation advised all bidders to expressly check and ensure prices for each bid item included all costs and mark-ups (R4, tab 4 at 25).

Consequently, the CHANGES clause incorporated into the contract cannot be reasonably read to create an independent basis for the agency to pay Pacific Dredge for

---

[1] Appellant argues it cannot be charged with reading and understanding these terms, especially when *Gulf Pac. Cont., LLC* was issued years after appellant submitted its bid here and at least one Board judge interpreted FAR 52.222-30 differently (app. reply at 4-5). This clause, however, has been in the FAR since 2001 and is plain on its face.

[2] FAR 22.404-12(c)(1) states that this method is generally used in construction-only contracts (with options to extend the term) that are not expected to exceed a total of 3 years, as we have here.

the wage increase.[3]  As the appellant itself states, the FAR 52.243-4, CHANGES clause is a mandatory clause.  *See* FAR 43.205(d)(the contracting officer "shall" insert the 52.243-4 clause in certain solicitations and contracts).  Therefore, if we agreed with appellant's interpretation--that the mandatory CHANGES clause must be read to always require an equitable adjustment to a DOL construction wage rate increase inserted in an option to extend--it would render FAR 52.222-30 meaningless as there would never be an instance where no adjustment would be made.  Rather, as the title of FAR 52.222-30 explains, either the contract contains no *method* to adjust prices after award, or there is a separately specified *method* such as application of a coefficient to pricing obtained from pricing data; the CHANGES clause is not a separately specified pricing *method*.

CONCLUSION

For the foregoing reasons, the appeal is denied.

Dated:  August 16, 2022

LAURA EYESTER
Administrative Judge
Armed Services Board
of Contract Appeals

---

[3] The appellant cites to a recent article stating the *Gulf Pac. Contracting, LLC* decision is harsh and the underlying policy of placing such risk on contractors is "unwise and somewhat unfair" (app. reply at 5, *quoting* 35 Nash & Cibinic Rep. NL ¶ 70, *Wage Rates for Option Years:  No Recovery?*).  We note that these clauses and regulations were implemented pursuant to notice and comment rulemaking and the Board cannot read into a rule something that is just not there.

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63234, Appeal of Pacific Dredge & Construction LLC, rendered in conformance with the Board's Charter.

Dated:  August 17, 2022

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals